UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

CASEY DICKERSON,

    Petitioner,

v.                                    CASE NO. 6:15-cv-178-Orl-37KRS
                                          (6:12-cr-228-Orl-37KRS)

UNITED STATES OF AMERICA,

    Respondent.

**ORDER**

This case involves a motion to vacate, set aside, or correct an illegal sentence pursuant to 28 U.S.C. § 2255 (Doc. 1) filed, through counsel, by Casey Dickerson. The Government filed a response (Doc. 4) to the motion. Petitioner filed a reply to the response (Doc. 6).

Petitioner asserted three grounds for relief in his motion. The Court previously denied grounds two and three of Petitioner's motion and scheduled an evidentiary hearing on ground one regarding whether counsel rendered ineffective assistance by advising Petitioner that mistake of age is not a defense to sexual abuse of a minor in violation of 18 U.S.C. §§ 2243(a) and 2. (Doc. 10 at 4-5). On September 13, 2016, an evidentiary hearing was conducted on ground one. *See* Doc. 17. As discussed hereinafter, ground one is denied.

**I.    PROCEDURAL HISTORY**

Petitioner was charged by indictment with aggravated sexual abuse in violation

of 18 U.S.C. §§ 2241(a) and 2 (Count One) and sexual abuse of a minor in violation of 18 U.S.C. §§ 2243(a) and 2 (Count Two). (Criminal Case No. 6:12-cr-228-Orl-37KRS, Doc. 12).[1] Petitioner proceeded to trial, and a jury found him guilty as charged. (Criminal Case Doc. 65). The Court sentenced Petitioner to a 240-month term of imprisonment for Count One and to a 120-month term of imprisonment for Count Two with the sentences to run concurrently. (Criminal Case Doc. 79).

Petitioner appealed. The Eleventh Circuit Court of Appeals affirmed Petitioner's convictions. (Criminal Case Doc. 100).

## II.   LEGAL STANDARD

The Supreme Court of the United States in *Strickland v. Washington*, 466 U.S. 668 (1984), established a two-part test for determining whether a convicted person is entitled to relief on the ground that his counsel rendered ineffective assistance: (1) whether counsel's performance was deficient and "fell below an objective standard of reasonableness"; and (2) whether the deficient performance prejudiced the defense. *Id*. at 687-88. A court must adhere to a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Id.* at 689-90. "Thus, a court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's

---

[1] Criminal Case No. 6:12-cr-228-Orl-37KRS will be referred to as "Criminal Case."

conduct." *Id*. at 690; *Gates v. Zant*, 863 F.2d 1492, 1497 (11th Cir. 1989).

As observed by the Eleventh Circuit Court of Appeals, the test for ineffective assistance of counsel:

> has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial. Courts also should at the start presume effectiveness and should always avoid second guessing with the benefit of hindsight. *Strickland* encourages reviewing courts to allow lawyers broad discretion to represent their clients by pursuing their own strategy. We are not interested in grading lawyers' performances; we are interested in whether the adversarial process at trial, in fact, worked adequately.

*White v. Singletary*, 972 F.2d 1218, 1220-21 (11th Cir. 1992) (citation omitted). Under those rules and presumptions, "the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." *Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994).

### III.   ANALYSIS

Petitioner asserts counsel rendered ineffective assistance by advising him that mistake of age is not a defense to sexual abuse of a minor in violation of 18 U.S.C. § 2243(a).[2] (Doc. 1 at 12). Petitioner contends that had he known mistake of age is an affirmative defense, he would not have conceded guilt to Count Two. (*Id*.).

Pursuant to 18 U.S.C. § 2243(c)(1), a defendant may assert as a defense to sexual

---

[2] Petitioner raised this ground on direct appeal. The Eleventh Circuit chose not to address the issue because the record had not been sufficiently developed. (Criminal Case Doc. 100 at 8-9).

3

abuse of a minor that the defendant "reasonably believed that the other person had attained the age of 16 years." However, the defendant must establish this defense by a preponderance of the evidence. 18 U.S.C. § 2243(c)(1).

At the evidentiary hearing, Petitioner testified that before trial, he met with his attorney, Wesley Blankner, and told him what happened during the charged offenses. According to Petitioner, he told Mr. Blankner that he did not know the age of the victim, J.B., at the time of the incident. Petitioner said he did not learn her age until he was initially questioned about the incident while on the cruise ship. Petitioner maintained he never asked any of the individuals involved in the incident, including J.B., their ages. Petitioner indicated he believed J.B. was eighteen or nineteen based on her appearance. Petitioner said that Mr. Blankner told him that mistake of age was not a defense to Count Two.

Petitioner testified that prior to trial, he gave a proffer to the Government in the hopes the Government would agree to allow him to plead guilty to Count Two and to dismiss the more serious charge of aggravated sexual abuse in violation of 18 U.S.C. §§ 2241(a) and 2 (Count One). Petitioner acknowledged that he had given two statements prior to the proffer and had lied in both instances. Petitioner testified that he told the Government in the proffer that he did not know how old J.B. was at the time of the offenses. In contrast, Special Agent Christopher Williams, who participated in the proffer, said Petitioner did not mention J.B.'s age at the proffer and never said he believed

J.B. was sixteen or older at the time of the incident. The Government rejected Petitioner's request to dismiss Count One in return for a plea of guilty to Count Two after the proffer. Special Agent Williams testified that Petitioner's proffer was not consistent with the evidence.

Petitioner testified that he agreed with Mr. Blankner's advice to concede guilt as to Count Two at trial and to focus the defense on challenging the "use of force" element of Count One. Petitioner said he chose not to testify at trial based on Mr. Blankner's advice that mistake of age was not a defense to Count Two. Petitioner, however, acknowledged that he knew he intended to concede guilt to Count Two and that the primary issue of concern at trial was challenging the use of force element, but he chose not to testify regarding Count One. Petitioner said Mr. Blankner told him on the second day of trial that it would not be wise for him to testify because Mr. Blankner thought they had won the case. Petitioner agreed that winning the case meant being acquitted of Count One. Petitioner testified that had he known mistake of age was a defense to Count Two, he would have testified at trial that (1) he did not know J.B.'s age, and (2) he did not use force during the incident. Petitioner said he knew that his three prior statements could have been used to impeach him.

Mr. Blankner testified that he has been an attorney for thirty-eight years and his practice is predominantly criminal litigation. Mr. Blankner said he is experienced with sexual assault cases and has approximately ten to twenty criminal trials per year. Mr.

5

Blankner indicated that he discussed the charges with Petitioner, including the circumstances of the offenses.

Mr. Blankner testified that his criminal file contains a copy of the statute indicating that mistake of age is an affirmative defense to Count Two, and he likely gave a copy of the statute to Petitioner. Mr. Blankner's file copy of the statute was introduced in evidence. In contrast to Petitioner's testimony, Mr. Blankner said that he discussed with Petitioner that mistake of age was a possible affirmative defense to Count Two. Mr. Blankner denied that he would have told Petitioner there was no defense to Count Two. Mr. Blankner maintained he would have told Petitioner that in order to raise and succeed on the affirmative defense, Petitioner would have to testify and the jury would have to believe him despite the other evidence. Mr. Blankner testified he did not think Petitioner ever claimed during his proffer to the Government that he believed J.B. was sixteen or older.

Mr. Blankner stated that he spoke to Petitioner about his right to testify throughout the case. According to Mr. Blankner, he told Petitioner that he was concerned about Petitioner testifying because testimony regarding his conduct on the ship would be raised in cross-examination and his credibility could be impeached with his proffer. Mr. Blankner said he advised Petitioner that he did not think it was in his best interest to testify, but the choice was his, and that the only way to present an affirmative defense was for Petitioner to testify.

6

Assessing the credibility of witnesses is reserved for the Court. *See Castle v. Sangamo Weston, Inc.*, 837 F.2d 1550, 1559 (11th Cir. 1988) ("Assessing the weight of evidence and credibility of witnesses is reserved for the trier of fact."). "'[T]o adequately determine the credibility of a witness . . . the fact finder must observe the witness.'" *United States v. Powell*, 628 F.3d 1254, 1257 (11th Cir. 2010) (quoting *Louis v. Blackburn*, 630 F.2d 1105, 1110 (5th Cir. 1980)). "A proper credibility determination. . . includes [consideration of] 'the internal consistency of the [witness's] testimony, or his candor or demeanor on the stand.'" *United States v. Ramirez-Chilel*, 289 F.3d 744, 749 (11th Cir. 2002) (quoting *Gallego v. United States,* 174 F.3d 1196, 1198 (11th Cir. 1999)).

After carefully considering the evidence and viewing the witnesses and their demeanor while testifying, the Court finds the testimony of Mr. Blankner and Special Agent Williams to be more credible than the testimony of Petitioner. In making this determination, the Court notes that Petitioner admittedly lied in his pre-trial statements regarding the offenses. Mr. Blankner, on the other hand, has been practicing criminal law for approximately thirty-eight years, is familiar with sexual assault cases, has had numerous trials, and displayed a clear memory of his interactions with Petitioner, the trial strategy, and the evidence adduced at both the proffer and the trial.

Furthermore, Special Agent Williams' testimony that Petitioner did not mention at the proffer that he believed J.B. was sixteen or older is consistent with Mr. Blankner's testimony. Moreover, Mr. Blankner's testimony that he discussed the possibility of the

7

defense of mistake of age with Petitioner is supported by the fact that Mr. Blankner had a copy of the relevant statute in his file. Conversely, Petitioner's testimony that he would have testified *inter alia* that he did not use force if he had known mistake of age was a defense to Count Two is called into doubt by his decision not to testify despite knowing at trial that the issue of force was paramount to his defense as to Count One. In sum, the Court finds Mr. Blankner's testimony that he discussed the defense of mistake of age with Petitioner to be more credible than Petitioner's testimony otherwise.

In light of the Court's credibility determination, Petitioner has not established that Mr. Blankner provided deficient performance. Mr. Blankner discussed the affirmative defense of mistake of age with Petitioner. Petitioner knowingly and voluntarily chose to concede guilt of Count Two, the less serious charge, and focus his defense on whether force was used in relation to Count One. In addition, Mr. Blankner's advice that Petitioner not testify was a reasonable strategy given the inconsistencies in Petitioner's prior statements and the possibility his credibility would have been impeached. Likewise, Mr. Blankner's strategy of admitting to the sexual act with a minor while disputing the more serious sexual assault with force charge was reasonable and made perfect sense in light of the enhanced penalty associated with Count One. The logic of this strategic decision further serves to increase the credibility of Mr. Blankner's testimony considering all the circumstances.

Petitioner also has failed to demonstrate prejudice resulted from Mr. Blankner's

alleged deficient performance. "[W]here the alleged error of counsel is a failure to advise the defendant of a potential affirmative defense to the crime charged, the resolution of the 'prejudice' inquiry will depend largely on whether the affirmative defense likely would have succeeded at trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). Other than Petitioner's putative testimony, there is no evidence in the record to support the affirmative defense of mistake of age. Had Petitioner testified, his credibility would have been undermined by his prior statements in which he admittedly lied.

Furthermore, Petitioner's testimony would have been refuted by evidence presented at trial. T.B.L., one of the six juveniles who came to Petitioner's ship cabin where the offenses occurred and who was in the cabin bathroom at the time of the incident, testified that Petitioner asked all of the juveniles how old they were. (Criminal Case Doc. 69 at 81). T.B.L. said he told Petitioner he was 15 and that J.B. and S.W. told Petitioner their ages. (*Id.*). T.B.L. did not remember J.B. and S.W.'s ages, but said "[t]hey were, like, 14, 15, my age." (*Id.*). T.B.L. testified that all of the juveniles told Petitioner their ages and that no one said they were an adult. (*Id.*). Petitioner also bought D.S., another juvenile, alcohol and gave alcohol to J.B. and S.W. when they reached Petitioner's cabin. (*Id.* at 155, 178-79). There is no evidence that Petitioner met the juveniles under circumstances that reasonably would have led him to believe that J.B. was sixteen years of age or older.

In closing argument, the prosecutor argued, "[E]ven if the kids hadn't told

[Petitioner] how old they were, you've seen four of the six of them. You've seen their demeanor. You've seen their appearance. Is there any doubt they're minors? Is there any doubt that they're kids?" (Criminal Case Doc. 70 at 45). Furthermore, although FBI Special Agent Chris Williams testified that Petitioner told him after the offenses that he thought D.S. was 19 or 20, (Criminal Case Doc. 69 at 303), defense counsel observed D.S. looked a little older than the other juveniles. (Criminal Case Doc. 70 at 65).

For all of these reasons, the Court concludes that Petitioner has not established a reasonable probability exists that the jury would have found that Petitioner showed by a preponderance of the evidence that he reasonably believed J.B. was sixteen years of age had he presented this defense. Consequently, Petitioner has neither established that Mr. Blankner was deficient regarding the advice he gave concerning the affirmative defense nor has Petitioner demonstrated that he was prejudiced as a result of Mr. Blankner's purported advice. Therefore, ground one is denied.

Any of Petitioner's allegations that are not specifically addressed herein have been found to be without merit.

Accordingly, it is hereby **ORDERED AND ADJUDGED**:

1. Petitioner's motion to vacate, set aside, or correct an illegal sentence pursuant to 28 U.S.C. § 2255 (Doc. 1) is **DENIED**.

2. The Clerk of the Court shall enter judgment accordingly and is directed to close this case.

3.   The Clerk of the Court is directed to file a copy of this Order in criminal case number 6:12-cr-228-Orl-37KRS and to terminate the motion to vacate, set aside, or correct an illegal sentence pursuant to 28 U.S.C. § 2255 (Criminal Case Doc. 102) pending in that case.

4.   This Court should grant an application for certificate of appealability only if the Petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).   Petitioner has failed to make a substantial showing of the denial of a constitutional right.[3]   Accordingly, a Certificate of Appealability is **DENIED** in this case.

**DONE AND ORDERED** in Orlando, Florida, this 15th day of September, 2016.



ROY B. DALTON JR.
United States District Judge

Copies to:
OrlP-1 9/14
Counsel of Record

---

[2] Pursuant to the *Rules Governing Section 2255 Proceedings for the United States District Court*, "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."   *Rules Governing Section 2255 Proceedings for the United States District Courts*, Rule 11(a).